J-S40022-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JENNIFER A. MARTZ, | : | |
| | : | |
| Appellant | : | No. 1768 WDA 2014 |

Appeal from the Judgment of Sentence September 23, 2014,
Court of Common Pleas, Butler County,
Criminal Division at No. CP-10-CR-0001356-2013

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED JULY 8, 2015**

Jennifer A. Martz ("Martz") appeals from the September 23, 2014 judgment of sentence entered by the Butler County Court of Common Pleas following her convictions by a jury of theft by unlawful taking and receiving stolen property and conviction by the trial court of criminal mischief, a summary offense.[1]  Upon review, we affirm.

The trial court provided the following summary of the trial testimony:

> The first witness presented by the Commonwealth was Juli Royle.  She testified to attending a wedding reception at Donegal Grange on June 8, 2013.  At one point during the reception, Ms. Royal testified, she went inside and saw [Martz] standing with her arms crossed beside the gift or card box.  No others were inside except for the D.J. and some children.  Ms. Royal spoke to [Martz] and asked if she was going to come outside with the other guests.

---

[1]  18 Pa.C.S.A. §§ 3921(a), 3925(a), 3304(a)(5).  The trial court acquitted Martz of disorderly conduct, 18 Pa.C.S.A. § 5503(a)(4).

*Retired Senior Judge assigned to the Superior Court.

[Martz] stated that she was going to listen to music for a little while. Ms. Royal testified that she had used the restroom prior to the time [Martz] had arrived. The toilets were functioning at that time. Later, Ms. Royal observed a confrontation with [Martz] that took place outside of the Donegal Grange. During the confrontation, [Martz] "kept trying to leave" though others present would not permit her to do so until the police arrived or they were permitted to check her to make sure she did not have stolen money on her person.

The next witness presented by the Commonwealth was Trooper Jason Frances[] of the Pennsylvania State Police. He testified that on June 28, 2013, he was dispatched to a disturbance at the Donegal Grange. Once he arrived there, Trooper Frances observed [Martz] sitting on the ground near a dumpster by the rear parking lot. Trooper Frances exited his vehicle and placed [Martz] in his police cruiser for her safety because there was a "large[,] angry crowd" nearby. The crowd was angry, Trooper Frances testified, because "they were accusing [Martz] of stealing the cards, putting them in the toilet, ripping up checks and taking the cash." A member of the crowd handed money to Trooper Frances and indicated he retrieved it from [Martz]. [Martz] denied stealing the money and indicated it came from a tax return and [a withdrawal from an] ATM. Given the opportunity later to produce a bank statement, Trooper Frances testified, [Martz] [declined] to do so. The money handed over to Trooper Frances consisted of fives, tens, twenties, and a fifty[-]dollar bill totaling $475. After the money was counted, it was returned to the victim[, the groom]. Trooper Frances indicated that he obtained the wedding cards that were found in the toilet[, and the victim reported to him that the cards contained money].

Next to testify was Gerald Scherer, the brother of the groom. Mr. Scherer testified that [Martz] arrived at the wedding reception with George McCray

approximately two hours after it had started. Shortly after arriving, Mr. Scherer testified, [Martz] went inside while most of the guests were outside. After it was discovered that the wedding gifts had been stolen, Mr. Scherer testified, the group of guests did not want anyone to leave because they wanted to "[f]igure out what exactly was going on." He testified that it was discovered that [Martz] was inside when the cards were stolen. He continued:

She was the only one in there, and we wanted her to, my cousin said to me that if she goes in the restroom and reveals herself, everything, that she has nothing, she's free to go because she wanted to leave and I said okay. She didn't want to do that. So I said, well, we are going to have to call the cops. Somebody called the cops, and I followed her around[] until the cops came. I followed her for probably it was a while probably half hour, forty-five minutes.

Mr. Scherer testified that [Martz] "[e]nded up at a dumpster in the parking lot[,]" and:

She kind of had her hands on it and was kind of saying like ["]I can't believe you'd think it was me[,"] and then just when somebody said cops are coming over the hill, coming up the hill, going to be here in a minute, I seen her reach into her bra and pull out a wad of cash just then I was right there two feet away. My buddy was standing beside me, ["]there it is let's grab it,["] we restrained her, got her on the ground. I don't know how many people it took. She had a death grip on it. Pulled the money from her hand, and they took a wad of cash. The only denomination I seen folded on top was a fifty.

Mr. Scherer indicated that [Martz] had been trying to put the money in the dumpster.

Nicole Scherer, the bride, was the next witness to testify. She indicated that [Martz] arrived at the reception sometime after everyone had finished eating when most people were outside. At one point Ms. Scherer went inside and observed [Martz] by the gift table. According to Ms. Scherer, [Martz] appeared to be "nervous" and "pacing[.]" Ms. Scherer, at one point, saw [Martz] enter the restroom. After leaving the restroom, [Martz] returned to a position near the gift table. [Martz] conversed briefly with Ms. Scherer, retrieved a cup from the garbage that had been thrown away, and went outside. Less than a minute after [Martz] went outside, another guest approached Ms. Scherer and indicated that the toilet in the bathroom would not flush, that she had reached into the tank, and that [wedding] cards and checks had been placed in the tank. The guest handed the cards and checks to Ms. Scherer, who went outside and found her husband. …

The [d]efense called as its first witness George McCray[, Martz' boyfriend]. Mr. McCray testified that in the days leading up to the wedding reception, he withdrew several hundred dollars from ATM machines and gave $400 to [Martz] in order to pay [his property] taxes. According to Mr. McCray, [Martz] had that money in her bra during the reception.

[Martz] was the final witness to testify. She denied stealing the money from the wedding [cards]. [She testified that the money in her bra belonged to her and to Mr. McCray; that she brought it with her to keep it safe; and that she was never given a chance to explain to the guests that the money was hers before they jumped on her and forcibly removed it from her bra, not from her hand.]

Trial Court Opinion, 1/12/15, at 1-4 (record citations omitted).

The jury and the trial court, respectively, convicted Martz of the aforementioned crimes. On September 18, 2014, the trial court sentenced Martz to time served to twelve months of incarceration with immediate parole, followed by eighteen months of probation. Martz filed a timely post-sentence motion challenging the weight and sufficiency of the evidence to support her convictions. The trial court denied the motion on October 15, 2014.

Thereafter, Martz filed a timely notice of appeal and complied with the trial court's order for the filing of a concise statement of errors complained of on appeal. She raises the following issue for our review: "Whether the weight and sufficiency of the evidence presented by the Commonwealth is enough to sustain the guilty verdict rendered for the offenses of theft by unlawful taking and receiving stolen property?" Martz' Brief at 9.

Although phrased as a single issue, Martz raises two separate arguments on appeal. We begin by addressing her sufficiency claim. Martz asserts that there was insufficient evidence to support her convictions of theft by unlawful taking and receipt of stolen property because there was no evidence that the destroyed wedding cards contained any money, nothing to link Martz to the destroyed wedding cards, and nothing to establish that she stole the money recovered from her person. *Id.* at 16-17. Rather, relying on testimony presented in her defense, Martz states that the evidence showed that the money belonged to her. *Id.* at 17. The trial court found

that the evidence was sufficient to convict her of both charges. Trial Court Opinion, 1/12/15, at 4-5. We agree.

Appellate review of a challenge to the sufficiency of the evidence is de novo. **Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014). "[O]ur scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Id.** at 420-21. "The Commonwealth may sustain its burden by means of wholly circumstantial evidence." **Commonwealth v. Martin**, 101 A.3d 706, 718 (Pa. 2014) (citation and quotation omitted). "Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence." **Id.** It is for the finder of fact to pass upon the credibility of the witnesses and weight of the evidence presented. **Commonwealth v. Melvin**, 103 A.3d 1, 40 (Pa. Super. 2014).

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

The jury heard evidence that upon arriving at the wedding reception, Martz positioned herself near the card and gift table alone. N.T., 8/21/14, at 23, 44, 58. Martz remained there as individuals came in and out of the reception hall. *Id.* at 23, 58, 62, 78. She was observed to be "nervous" and was "pacing." *Id.* at 62. Martz went to the ladies' room, at which time both toilets were functioning. *Id.* at 23, 66-67. Less than a minute after Martz visited the restroom, one toilet was reportedly broken and a guest found wedding cards and checks in the toilet tank. *Id.* at 65-66.

A wedding guest confronted Martz and she denied that she stole anything and attempted to leave the reception. *Id.* at 24-25, 53. She refused a guest's request to "reveal[] herself" in the restroom to prove that she did not steal anything. *Id.* at 44.

Martz ultimately positioned herself near a dumpster in the parking lot. *Id.* at 45. Upon learning that the police were approaching, Martz removed a large amount of money from her bra and attempted to "stash" the money in the dumpster in a "sneaky" manner. *Id.* at 45, 54.

When the police arrived, a wedding guest gave Trooper Frances the money obtained from Martz, which consisted of fifty-, twenty-, ten- and five-dollar bills, totaling $475. *Id.* at 32. Martz and Mr. McCray testified that they had obtained the money found on Martz' person from various trips to the ATM, *id.* at 87, 90, 107-09, but Trooper Frances testified that it was "[v]ery rare" to get a fifty dollar bill from an ATM. *Id.* at 39. Trooper

Frances testified that he offered for Martz to use a computer at the police barracks to show him a copy of her bank statement indicating that the money belonged to her, but she declined to do so. *Id.* at 122. Because the cards were destroyed, Trooper Frances testified that he was unable to track down the givers of the cards to determine how much money was inside of the cards, but that he was made aware that there had been money inside of the cards. *Id.* at 36.

Viewing the evidence presented in the light most favorable to the Commonwealth, we conclude that the evidence sufficiently, albeit circumstantially, supports a finding that Martz stole the cash inside of the wedding cards, put it in her bra with the intent of depriving the victims of the money, and attempted to hide the cards and checks in the toilet tank. Therefore, we find no error in the jury's decision to convict Martz of theft by unlawful taking and receipt of stolen property.

We now turn to Martz' challenge to the weight of the evidence, which we review according to the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks

one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Tejada***, 107 A.3d 788, 795-96 (Pa. Super. 2015) (citation omitted).

Martz premises her weight claim on the Commonwealth's presentation of "testimony that was unreliable, tenuous and vague." Martz' Brief at 18. She points to the absence of testimony concerning anyone observing her take anything, bring anything with her to the bathroom, or any evidence that money had been removed from the cards found in the toilet tank. ***Id.*** at 18-19. According to Martz, the testimony presented was "pure speculation … so lacking in substance, so incredible, and so contradictory that it is of insufficient weight to support the verdict." ***Id.*** at 19.

The trial court found that "[t]he jury's verdict was not so contrary to the evidence as to shock one's sense of justice." Trial Court Opinion, 1/12/15, at 5. The jury disbelieved Martz' version of events and found credible the Commonwealth's witnesses' portrayal of the events of the evening, which, according to the trial court, support Martz' convictions of theft by unlawful taking and receiving stolen property. ***Id.***

We find no abuse of discretion in the trial court's conclusion. Although Martz denied that she stole the money and presented evidence that she and

her boyfriend had made several trips to the ATM in the days leading up to the wedding, *see* N.T., 8/21/14, at 88-90, 105-07, the jury was free to disregard that evidence and accept the testimony of the Commonwealth's witnesses as credible. *See Tejada*, 107 A.3d at 795-96. As such, no relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015