J-S68029-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellee :
:
        v. :
:
GARNELL GRANT, :
:
        Appellant : No. 2621 EDA 2014

Appeal from the Judgment of Sentence April 25, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0008319-2011

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:        **FILED DECEMBER 04, 2015**

Garnell Grant ("Grant") appeals from the April 25, 2014 judgment of

sentence entered by the Philadelphia County Court of Common Pleas.  Upon

review, we affirm.

The trial court provided the following summary of the facts adduced at

trial:

> On Friday, March 11, 2012, at around 5:00 p.m.,
> Ms. Mariethia Smith left work and went to her home,
> to meet a friend and go to a casino. N.T.
> 11/26/2013, pp. 12-15. Ms. Smith's friend picked
> her up from her house and they drove towards the
> casino. *Id.* at 14. A few blocks from her house, Ms.
> Smith noticed [Grant] standing on the corner or Mt.
> Airy Avenue and Stenton Avenue. *Id.* at 15. [Grant]
> had been in a relationship with Ms. Smith for
> approximately three months, spanning from June
> 2009, to September, 2009. *Id.* at 15, 23. Following
> their relationship, Ms. Smith obtained a [p]rotection
> from [a]buse ("PFA") [o]rder from the courts on
> January 3, 2011, set to expire in January, 2014. *Id.*

at 13. In 2010 and 2011, Ms. Smith received numerous threatening phone calls from [Grant], including sixteen voicemails on her home phone, and eighteen voicemails on her cell phone. *Id.* at 26-27. After the PFA was served on [Grant], he called Ms. Smith saying he wasn't "scared of no f'ing cops, none of them." *Id.* at 14.

Upon seeing [Grant], Ms. Smith asked her friend to drive her back home. *Id.* at 15. Ms. Smith entered her house, locked the doors behind her, made sure not to turn any lights on, and waited in the den located on the second floor. *Id.* at 15-16. Prior to March 11, 2012, someone had broken into her house several times. *Id.* at 15. Ms. Smith testified that someone busted her stack pipe, broken her Lennox crystal, put white paint on her white gowns, cut up most of her clothes, stole her jewelry, and stole her money. *Id.* at 28. After being home approximately twenty minutes, Ms. Smith heard her back door open and her security alarm announce that the back door had been opened. *Id.* at 15-16. All of the doors in the house were previously locked at the time. *Id.* When Ms. Smith heard the door open, she ran to the staircase, turned the downstairs light on, and ran down the steps. *Id.* at 16. From midway down the steps, Ms. Smith observed [Grant] standing in her living room. *Id.* [Grant]'s eyes widened when he made eye contact with Ms. Smith. *Id.* at 18. [Grant] then ran out the back door, as Ms. Smith chased him, but she lost sight of him. *Id.* at 18-19. Ms. Smith testified she feared for her life when she saw [Grant] standing inside her home. *Id.* at 19.

Ms. Smith further testified she never intended for [Grant] to possess keys to her home. [*Id.* at] 29. On one occasion, while in a relationship with [Grant], Ms. Smith let [Grant] use her keys temporarily to put something in her car while at Home Depot. *Id.* at 35. Once in possession of her keys, Ms. Smith searched for [Grant] but couldn't find him in the store for an extended period of time. *Id.* at 35. [Grant] handed the keys back to Ms. Smith before they left Home

Depot. *Id.* Ms. Smith changed her locks five times during the period of the break-ins. *Id.* at 31.

On a Monday in March, 2011, Mr. Benjamin Smith, went to Ms. Smith's house to talk to her. [*Id.* at] 46. Mr. Smith was a coworker of Ms. Smith and knew her for over fifteen years. *Id.* [] When Mr. Smith knocked on the front door, [Grant] answered, and informed him that Ms. Smith was not at home. *Id.* Mr. Smith left a message for Ms. Smith including his phone number. *Id.* Mr. Smith didn't receive a reply from Ms. Smith that week. On Wednesday of that week, Mr. Smith saw again [Grant] on the street and asked if he had given the message to Ms. Smith. *Id.* at 47. [Grant] replied, "I gave it to her. She's going to get back to you." *Id.* Ms. Smith testified that at no point in March of 2011, did [Grant] have permission to be in her home. [*Id.* at] 65[].

Police Officer Tyrone Brotis and Detective Jamal Rodriguez both testified [that] they investigated claims from Ms. Smith about a person breaking into her house. *Id.* at 64-65.

[Grant] testified his relationship with Ms. Smith lasted about a year, but then testified he couldn't be sure exactly how long their relationship lasted, [but that he believed he ended the relationship with Ms. Smith approximately two weeks before March 11, 2011]. [*Id.* at] 68-70. [Grant] further testified he didn't go to Ms. Smith[']s house on March 11, 2011, never met Mr. Smith, and never answered the door for Mr. Smith. *Id.* at 68-69. The [trial c]ourt found [Grant]'s testimony to be incredible.

Trial Court Opinion, 2/9/15, at 1-3.

At the conclusion of the bench trial held on November 26, 2013, the trial court found Grant guilty of burglary, criminal trespass, harassment, and

- 3 -

criminal contempt for violating the PFA.[1]  The trial court sentenced him on April 25, 2014 to 54 to 108 months of incarceration.  On May 5, 2014, Grant filed a timely post-sentence motion challenging the weight and sufficiency of the evidence to support his convictions.  On September 3, 2014, the trial court issued an order denying the post-sentence motion by operation of law.  Thereafter, Grant filed a timely notice of appeal, followed by a timely concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Grant raises two issues for our review:

I. Whether the lower court committed an abuse of discretion in sentencing [Grant] above his aggravated range of sentencing guidelines.

II. Whether the evidence was sufficient to convict [Grant] of the charges that he was found guilty of where the evidence presented by the Commonwealth was so unreliable and contradictory as to preclude the trier of fact from rendering the verdict that it did.

Grant's Brief at 4.

The first issue Grant raises on appeal challenges the discretionary aspects of his sentence.  This issue is not subject to our review as a matter of right.  Rather, "[a]n appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence."  *Commonwealth v. Tejada*, 107 A.3d 788, 797 (Pa. Super.

---

[1]  18 Pa.C.S.A. §§ 3502(a), 3503(a)(1)(i), 2709(a)(1); 23 Pa.C.S.A. § 6114(a).

2015) (citation omitted). This requires the appellant to satisfy all of the following:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Id.* (citation omitted).

Our review of the record reveals that although Grant filed a post-sentence motion, he failed to raise therein a claim challenging the discretionary aspects of his sentence. *See* Post-Sentence Motion, 5/5/14. The record further reflects that Grant did not present this argument before the trial court at his sentencing hearing. *See generally* N.T., 4/25/14, at 2-28 As such, the issue is waived. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) ("[I]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

In his second issue on appeal, Grant asserts that the evidence presented at trial was insufficient to support his convictions "because certain facts were elicited which ran contrary to the Commonwealth's case-in-chief." Grant's Brief at 14-17. His argument focuses solely upon the credibility of

the testimony presented by the Commonwealth, stating that Ms. Smith's testimony was "unreliable, contradictory and forms an insufficient basis for a verdict," relying on our Supreme Court's decision in **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976), in support of his argument. Grant's Brief at 15-17.

It is well settled that "[a]n argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence." **Commonwealth v. Melvin**, 103 A.3d 1, 43 (Pa. Super. 2014). In **Farquharson**, however, our Supreme Court stated that in certain circumstances, the evidence presented may be so unreliable and contradictory as to require vacation of a conviction on sufficiency grounds:

> Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.
>
> On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.
>
> This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence

- 6 -

offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding. *Commonwealth v. Bennett*, [] 303 A.2d 220 ([Pa. Super.] 1973) (and cases cited therein). Appellant argues that the *Bennett* principle is applicable here. We do not agree.

The *Bennett* principle is applicable only where the party having the burden of proof presents testimony to support that burden which is either so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason. In the facts of the *Bennett* case, the Commonwealth had predicated its case upon the evidence of one individual. The record clearly established that the testimony of that witness was so contradictory as to render it incapable of reasonable reconciliation and therefore the court properly refused to allow a verdict of guilt to stand.

*Farquharson*, 354 A.2d at 550 (most internal citations omitted).

Our High Court applied the above holding of *Farquharson* in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), to reverse the appellant's conviction of forcible rape. In *Karkaria*, the appellant was charged by private criminal complaint based upon his alleged rape of his younger stepsister. *Id.* at 1167. At trial, the Commonwealth's case rested entirely upon the testimony of the fourteen-year-old alleged victim, who testified that the rapes occurred on weekends when her mother and stepfather were out and the appellant was babysitting her. *Id.* at 1168. She denied that her other stepbrother, the appellant's biological brother was in the house at the time. *Id.* It was uncontested, however, that pursuant

to the custody arrangement between the appellant's parents, the appellant and his brother were always in the home on the same weekends. *Id.* It was likewise uncontested that the alleged victim's mother and stepfather only went out on the weekends. *Id.* at 1171. Moreover, although the alleged victim testified that the rapes occurred when the appellant babysat her, she also acknowledged that during the timeframe of the alleged rapes, she was old enough to watch herself and the appellant no longer acted as her babysitter. *Id.* at 1168. The Commonwealth presented no physical evidence or reports made regarding the alleged rapes. *Id.* at 1169, 1171.

The *Karkaria* Court concluded:

> The total failure of the Commonwealth to present any evidence that a single act of intercourse occurred during the [timeframe alleged] casts serious doubt upon the jury's ability to reasonably conclude that any criminal activity occurred during the time period charged.
>
> * * *
>
> [Therefore,] we are compelled to conclude that the evidence presented at trial when carefully reviewed in its entirety, is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law. Having reached this conclusion after careful and meticulous review of the record presented to this Court, we find that the verdict of the jury was not based on anything more than speculation and conjecture.

*Id.* at 1171-72 (footnote omitted).

This does not mean that any case involving allegedly contradictory or inconsistent testimony warrants consideration (let alone reversal) on sufficiency grounds. Rather, as our Supreme Court stated in *Commonwealth v. Brown*, 52 A.3d 1139 (Pa. 2012), "the critical inquiry" in resolving a sufficiency claim is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review **all of the evidence** is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
>
> [A] reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

- 9 -

*Id.* at 1163-64 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 326 (1979) (emphasis in the original)). The *Brown* Court clarified that despite its holding in *Karkaria*,

> [the] Court considers questions regarding the reliability of the evidence received at trial to be within the province of the finder-of-fact to resolve, and our Court will not, on sufficiency review, disturb the finder-of-fact's resolution except in those exceptional instances, as discussed previously, where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence.

*Id.* at 1165.

The case before us is not one that involves evidence that "is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." *Id.* Ms. Smith testified that Grant entered her house without her permission, in direct violation of the existing PFA, and that she observed him standing in her living room. N.T., 11/26/13, at 13-16. Ms. Smith's friend and former coworker testified to seeing Grant in Ms. Smith's home while Ms. Smith was not present around the same time as the break-in. *Id.* at 46-47. Ms. Smith further testified that there had been a series of break-ins at her home, which she attributed to Grant, and that Grant called her numerous times, leaving sixteen messages on her home phone and eighteen on her cellphone. *Id.* at 24-27. Ms. Smith believed that Grant surreptitiously obtained a copy of her house keys while they were dating, and although she changed her locks

several times, she later learned that because she purchased all of the locks at the same Home Depot, the same key continued to work to unlock her doors. *Id.* at 32-36. Grant presented no evidence to contradict Ms. Smith's claims.

The case boiled down to a question of whether the trial court, sitting as factfinder, found Ms. Smith to be credible. As stated above, this is a question of the weight to be accorded to the evidence, not its sufficiency. *Melvin*, 103 A.3d at 43. "This Court cannot substitute its judgment for that of the [factfinder] on issues of credibility." *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). As this is the only argument Grant presents in support of his sufficiency claim, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2015