J. S02013/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STANLEY DAVID KAMINSKI, JR., | : | No. 1775 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 21, 2016,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0007134-2015

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED FEBRUARY 28, 2017**

Stanley David Kaminski, Jr., appeals the judgment of sentence in which the Court of Common Pleas of Bucks County, following an open guilty plea, sentenced him to serve an aggregate term of 7 to 14 years' imprisonment for homicide by vehicle while driving under the influence ("DUI"), two counts of aggravated assault while DUI, and DUI.[1]

---

[1] 75 Pa.C.S.A §§ 3735(a), 3735.1(a), and 3802(d)(3), respectively. He also received two years' probation for two counts of recklessly endangering another person, 75 Pa.C.S.A. § 2705. Appellant pled guilty but received no further penalty for homicide by vehicle, two counts of aggravated assault by vehicle, involuntary manslaughter, and three counts of recklessly endangering another person. 75 Pa.C.S.A. §§ 3732(a) and 3732.1(a), and 18 Pa.C.S.A. §§ 2504(a) and 2705, respectively.

As the trial court related, appellant's plea included an admission to the following facts:

> . . . On July 1st of 2015 at 9:18 p.m. a single-vehicle crash occurred in the southbound lanes of Route 309 bypass in West Rockhill, Bucks County. Pennridge Regional police and emergency personnel were dispatched to the location.
>
> They were dispatched as a result of a 911 call from John and Paul Hasyn, H-A-S-Y-N, who were driving their vehicle on Route 309 in the same direction as [appellant], when [appellant's] vehicle lost control and almost hit the Hasyn's vehicle directly head on before leaving the roadway.
>
> Upon arrival the police observed a green 2005 Saturn in the trees off the roadway. The vehicle was some 20 yards into the wooded area. The Saturn was observed with extensive damage to the front, rear and driver's side of the vehicle.
>
> . . . [T]he vehicle went off the roadway in the wooded area where the vehicle ultimately came to a stop.
>
> The Saturn was occupied by four subjects. The driver, who was [appellant], Todd Rubin, Jacob Winter and Summer DeCastro. Todd Rubin was seated in the front passenger seat of the Saturn and was pronounced deceased at the scene due to the injuries suffered in the crash. The driver and remaining passengers . . . all required mechanical extrication to remove them from the car.

. . . [T]he entire roof of the car had to be cut off to remove the occupants of the vehicle. The responding fire department removed the occupants and they were taken to the hospital for serious injuries. Jacob Winter was interviewed at the hospital. Winter was seated in the back seat passenger's side of the Saturn, Summer DeCastro was in the back seat of the driver's side.

Winter stated that the four had recently left a party where they had been drinking. He told police that once on 309 [appellant] began driving fast. When Winter observed the speedometer hit 90 miles an hour he asked [appellant] to slow down. Rather than slow down [appellant] began to drive faster reaching speeds of up to 110 miles per hour, twice the posted speed limit of 55 miles an hour. Winter stated that he felt the car slide off of the roadway and then he hit a ditch.

Next thing he remembered was the fire department cutting the roof off [the] car. As a result of the crash Jacob Winter was hospitalized with a broken neck which required surgery to put rods in his neck to stabilize his injury. Winter also suffered from a severe concussion, broken right arm in four places, which required surgery to implant rods and plates. He also fractured his hip, which was dislocated from the impact of the crash.

. . .

Summer DeCastro . . . suffered a severe concussion, a broken collar bone, fractured vertebrae, fractured pelvis,

three fractured ribs, lacerations to her legs and her hip was dislocated.

The autopsy of Todd Rubin revealed that Rubin suffered several lacerations to his face and scalp. He also suffered numerous fractures to his vertebrae causing significant damage to the enclosed spinal cord causing a fatal hemorrhage about his brain. Rubin also suffered fractures to his ribs, bruised and lacerated lungs and a large right hemithorax.

. . .

The autopsy was conducted by Dr. Ian Hood, forensic pathologist, and he determined the cause of death to be determined by multiple fatal injuries suffered during the crash.

[Appellant's] blood was secured through implied consent. The blood was tested through the Bucks County Crime Lab and alcohol was present at . . . .128 percent. His blood was also tested by National Medical Services and tested positive for marijuana, both the active ingredient and metabolites and for synthetic marijuana.

Dr. Patel, a forensic toxicologist, would opine that [appellant] was under the influence of drugs and alcohol to a degree that would impair his ability to drive safe[l]y. Officer Tim Maloney, he's a sergeant with the Pennridge Regional Police Department, conducted a crash reconstruction in this case.

Sergeant Maloney determined that the defendant was driving between 89 and 99 miles per hour at the point when the Saturn crashed into the ditch, which was

already off the road and losing momentum going down a slight hill, hitting a number [of] trees before the vehicle came to its final resting place. The vehicle actually went airborne when it struck a number of those trees.

There were no mechanical defects of the Saturn or the roadways which could have contributed to the causation of this crash. While incarcerated at the Bucks County Correctional Facility and prior to the preliminary hearing in this case, [appellant] had asked the victim, Jacob Winter, to tell the police that he had lied about speeding at 110 miles an hour to help [appellant] out in his criminal case.

N.T. 3/21/16, pp. 20-26.

Trial court opinion, 7/12/16 at 2-3.

Following sentencing, appellant filed a motion for reconsideration of sentence which the trial court denied after a hearing on May 9, 2016.

Appellant raises the following issue for this court's review:

Did the sentencing court abuse its discretion by sentencing [a]ppellant to serve an aggregate sentence of not less than seven years nor more than fourteen years of incarceration in a state correctional facility by not considering mitigating evidence and relying on factors that were already contemplated by the available sentencing guidelines?

Appellant's brief at 4.

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have

abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (citation omitted).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Second, appellant raises an issue that the trial court abused its discretion when it failed to consider mitigating factors and relied on factors that were already accounted for in the sentencing guidelines. A review of the record reveals that appellant did not raise this issue at sentencing. In his motion for reconsideration, appellant recounts his charges and convictions and requests reconsideration of the sentence. However, appellant does not raise the issue that he brings to this court for review. As a result, because appellant did not raise this issue at sentencing or in his post-sentence motion, it is waived even though the trial court addressed the issue in its opinion. ***See Commonwealth v. Tejada***, 107 A.3d 788, 799 (Pa.Super. 2015) (holding that where an appellant fails to preserve discretionary aspects of sentencing claims at sentencing or in a post-sentence motion, those claims are not subject to appellate review). Consequently, this court does not have jurisdiction to address appellant's challenge to the discretionary aspects of his sentence.

Judgment of sentence affirmed.

J. S02013/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017