J-A25008-14

2015 PA Super 2

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :         PENNSYLVANIA
        Appellee    :
   :
        v.    :
   :
NICHOLAS TEJADA,    :
   :
        Appellant    :    No. 2279 EDA 2013

Appeal from the Judgment of Sentence March 25, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No(s): CP-51-CR-0006216-2012
and CP-51-CR-0006219-2012

BEFORE: DONOHUE, WECHT and PLATT*, JJ.

OPINION BY DONOHUE, J.:            **FILED JANUARY 06, 2015**

Nicholas Tejada ("Tejada") appeals from the March 25, 2013 judgment of sentence entered by the Philadelphia County Court of Common Pleas following his convictions of two counts of criminal conspiracy to commit robbery.[1] Upon review, we find his challenges to the sufficiency and weight of the evidence to be without merit as the evidence presented at trial supported a finding that he was the individual who committed the robberies in question. We find his evidentiary challenge waived in part, as one of the arguments raised on appeal was not raised before the trial court, and find the other argument is meritless. Lastly, we conclude that he waived his challenges to the discretionary aspects of his sentence based upon his failure to raise the specific arguments below that he now makes on appeal, having

_____

[1] 18 Pa.C.S.A. § 903(a)(1), 3701(a)(1)(ii).

*Retired Senior Judge assigned to the Superior Court.

raised them for the first time in his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("1925(b) statement"). In so holding, we recognize that the three-judge panel decisions in *Commonwealth v. Egan*, 679 A.2d 237 (Pa. Super. 1996), and *Commonwealth v. Clinton*, 683 A.2d 1236 (Pa. Super. 1996), finding discretionary aspects of sentencing claims can be preserved when raised for the first time in a 1925(b) statement, were overruled by implication by the en banc panel of this Court in *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278 (Pa. Super. 2004) (en banc). We therefore affirm Tejada's judgment of sentence.

The trial court provided the following summary of the facts adduced at trial:

> On January 2, 2012 the first victim, Emily Orton, arrived home from work at about 10:15 pm. (N.T. 11/7/2012 at 25-26). She parked her car near the intersection of 9th and Kimball Streets in Philadelphia. (*Id.*) While walking on the sidewalk, she noticed [Tejada] and another male about ten feet away from her. (*Id.* at 26-28). They were walking directly toward her. (*Id.*) [Tejada]'s co-conspirator smiled at her and looped around behind her while [Tejada], with his face partially covered, pressed a gun against this victim's stomach and demanded "give me your purse, ma'am." (*Id.* at 30-32). [Tejada] snatched the victim's purse from her body and entered the backseat of an older black, beat-up Honda which made an incredibly loud noise as it drove away. (*Id.* at 33, 37). Inside the victim's purse was her purple wallet with ID cards, credit cards, and $60 United States currency. (*Id.* at 37-

- 2 -

38). The victim contacted the police and returned to her apartment. (*Id.* at 38).

Twenty minutes later, the second and third victims, Irene Thurston and Stacie Evans, respectively, had parked their cars and greeted each other near the corner of 4th and Emily Streets. (*Id.* at 77-78). Both victims noticed an old beat-up Honda with a long white scratch and a loud muffler. (*Id.*) With four Hispanic men inside, this vehicle passed them while travelling on Emily Street. (*Id.*) As the two victims continued to chat, the car turned around the block. (*Id.*) Alarmed, Ms. Thurston noticed two men walking across an empty lot toward her and Ms. Evans. (*Id.* at 81-82). Terrified, Ms. Thurston observed [Tejada], armed with a gun, run toward Ms. Evans. (*Id.* at 83). Also terrified that [Tejada] was brandishing a gun, Ms. Evans quickly dropped her purse. (N.T. 11/8/12 at 13). [Tejada] grabbed the purse. (*Id.*) Inside Ms. Evan's [sic] purse was her license, credit cards, two checkbooks, a necklace, a digital camera, and $5-10 in United States currency. (*Id.* at 20). Nothing was taken from Ms. Thurston. (N.T. 11/7/12 at 86). The two victims immediately called the police. (N.T. 11/8/12 at 20).

In response to the flash information and radio calls for the above incidents, Officers Padilla and Brown drove to the area of 2200 S. Mildred St. (*Id.* at 95). The officers witnessed [Tejada] exiting the driver seat of the above-mentioned Honda, while the co-conspirator exited the passenger seat. (*Id.* at 96). Officer Padilla stopped [Tejada] while Officer Brown chased the co-conspirator on a foot; the co-conspirator was eventually apprehended. (*Id.* at 97 98). The officers recovered victim Evans['] license on the ground next to the front passenger door of the Honda as well as two pocketbooks in the backseat. (*Id.* at 99-100).

The officers escorted all three victims to the area of 2200 S. Mildred Street, at which time they all identified the black Honda as the car they had seen

at their respective robbery locations. (***Id.*** at 23, N.T. 11/7/2012 at 39-42, 87-91). Ms. Orton did not identify [Tejada], but her belongings were all recovered in the back of the black Honda. (N.T. 11/7/2012 at 39-42). Ms. Evans['] purse, along with most of her belongings, was [sic] recovered in the back seat of the car. (N.T. 11/8/2012 at 23). Ms. Thurston identified [Tejada] as the perpetrator brandishing the firearm at 4th and Emily Streets. (N.T. 11/7/2012 at 87-91). Officer Padilla discovered that the owner of the Honda resided at 2241 Darien Street, and that other men might have run into the house. (N.T. 11/8/2012 at 101). While the officer was standing outside the house, the co-conspirator opened the door and asked what was going on. He allowed Officer Padilla to enter the house to look for other suspects. (***Id.*** at 105). Officer Padilla and her supervisor searched the house and discovered Ms. Evan's [sic] checkbooks in an upstairs bedroom. (***Id.*** at 106).

Trial Court Opinion, 12/26/13, at 3-5.

On November 15, 2012, a jury convicted Tejada of two counts of conspiracy to commit robbery, but acquitted him of two counts each of robbery, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possessing an instrument of crime.[2] On March 25, 2013, the trial court sentenced Tejada to four to eight years of incarceration for each count of conspiracy to run consecutively for an aggregate prison sentence of eight to sixteen years.

Tejada filed post-sentence motions on March 27, 2013, which the trial court denied on July 29, 2013. On August 7, 2013, Tejada filed a timely

---

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 6106(a)(1), 6108, 907(a).

notice of appeal followed by a court-ordered 1925(b) statement. The trial court thereafter filed a responsive opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Tejada raises the following issues for our review, which we have reordered for ease of disposition:

I.    Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was the evidence insufficient to sustain [Tejada's] [c]onspiracy convictions?

II.   Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, were [Tejada's] [c]onspiracy convictions against the weight of the evidence?

III.  Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the [t]rial [c]ourt err in permitting a prosecution witness to "identify" [Tejada's] arrest photograph?

IV.   Under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution as well as Article I, §§ 9, 13 of the Pennsylvania Constitution, did the [t]rial [c]ourt abuse its discretion in sentencing [Tejada]?

Tejada's Brief at 5.[3]  On October 31, 2014, we issued a memorandum decision affirming the judgment of sentence. We granted Tejada's motion for reconsideration to clarify that the holdings in *Egan* and *Clinton* (finding preserved discretionary aspects of sentencing claims raised for the first time

---

[3]  Apart from passing references to the constitutional provisions asserted in the statement of the issues raised, Tejada makes no argument regarding the constitutionality of his trial, convictions, or sentencing. We therefore confine our analysis to the arguments raised and developed.

in a 1925(b) statement) are no longer good law in the wake of *Melendez-Rodriguez*.

Tejada's first issue on appeal challenges the sufficiency of the evidence to convict him of conspiracy to commit robbery. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Murray*, 83 A.3d 137, 151 (Pa. 2013). We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt. *Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* (citation omitted).

Tejada does not claim that no robberies occurred or that there was not a conspiracy to commit them; rather, he states that the evidence was insufficient to prove that he was a party to the conspiracy – that he was anything more than merely present at the time the robberies occurred.[4] Tejada's Brief at 38-46. The trial court found that the evidence presented, including Ms. Thurston's identification of Tejada both at the scene and at trial as the individual who robbed Ms. Evans, was sufficient to sustain his convictions of conspiracy to commit robbery. Trial Court Opinion, 12/26/13, at 10-11.

The record reflects that Ms. Orton was the victim of an armed robbery at 10:15 p.m. on January 2, 2012. N.T., 11/7/12, at 25, 31-32. The gunman had a scarf over his face and hair and was thus unidentifiable, but Ms. Orton was able to describe him as relatively short (only a little taller than her five foot four inch-frame), Latino, with lighter skin and an average build. *Id.* at 40. The gun used to perpetrate the robbery was described as small – .22 caliber – and the robbers departed in an older model, "beat up"

---

[4] A conviction of conspiracy requires proof that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." **Commonwealth v. Knox**, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted), *aff'd*, ___ A.3d ___, 2014 WL 7090082 (Pa. Dec. 15, 2014); **see also** 18 Pa.C.S.A. § 903(a), (d). The underlying offense for both conspiracies was robbery, which requires proof, in relevant part, that in the course of committing a theft, the defendant threatened another with or intentionally put another in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a)(1)(ii).

black Honda with a loud muffler. *Id.* at 31, 33, 37. When asked to identify the robber later that night, she observed that Tejada was of the same height, build, skin tone and ethnicity as the gunman. *Id.* at 42. She also identified the car that police observed Tejada exiting at the beginning of their investigation as the same black Honda that she observed the robbers flee in after the robbery. *Id.* at 41. The car contained several of the items that had been stolen from her. *Id.* at 42.

At around 10:35 p.m., in a location approximately ten minutes from the first crime scene, a scratched black Honda with a loud muffler drove past Ms. Evans and Ms. Thurston, who were conversing with each other outside. *Id.* at 76-77, 78-79; N.T., 11/8/12, at 66. As the car drove past, Ms. Thurston observed the front passenger, describing him as a light-skinned Latino male with braids in his hair and wearing a shirt with red trim. N.T., 11/7/12, at 80. Ms. Thurston subsequently saw two men coming towards them. *Id.* at 82. The shorter man pulled a mask over his face and approached Ms. Evans. *Id.* He was carrying a small gun. *Id.* at 83. Ms. Thurston was able to observe him for approximately five seconds in good lighting conditions. *Id.* at 86. As a taller man with a long object came towards her, she ran away and did not reunite with Ms. Evans until she saw the loud, black Honda driving away a short time later. *Id.* at 82-83, 85, 86.

When taken to identify the perpetrators of the robbery, Ms. Thurston identified Tejada as the man with the gun who robbed Ms. Evans. *Id.* at 90.

She described him as being approximately five feet six inches tall, light-skinned, Latino, having braids in his hair, shadow on his face and red trim around his collar.[5] *Id.* at 88-89. This matches the general description Tejada provided of himself to police. N.T., 11/8/12, at 153-54. Both Ms. Thurston and Ms. Evans identified the car police observed Tejada exiting to be the Honda they heard and saw at the time of the robbery. *Id.* at 22-23; N.T., 11/7/12, at 88. Ms. Evans also observed in the car several items that were stolen from her. N.T., 11/8/12, at 23, 25-26.

Although Ms. Thurston identified Tejada as the perpetrator of Ms. Evans' robbery on the night it occurred, she was unable to identify him either at the preliminary hearing or at trial. The record reflects that at the time of trial, Tejada had changed his appearance and no longer had long, braided hair. N.T., 11/8/12, at 96. The Commonwealth provided Ms. Thurston the arrest photograph of Tejada taken on the night of the

---

[5] We disagree with Tejada's statement throughout his appellate brief that Ms. Thurston identified the other robbery suspect as having red trim on his collar. *See* Tejada's Brief at 12, 42, 49, 52. Contrary to Tejada's claims, she did not indicate that it was anyone other than Tejada who had the red trim. When asked if she identified the two perpetrators of the robbery, Ms. Thurston responded, "Yes, the one with the red trim around their [sic] collar," and was then asked questions about her identification of the gunman who robbed Ms. Evans. N.T., 11/7/12, at 88-89. She testified that the gunman had his hair in braids, was shorter than the other perpetrator, Latino, and had light skin. *Id.* at 89-90. Furthermore, as noted above, Ms. Thurston stated that the man she observed riding in the black Honda with the red trim on his collar had braids. *Id.* at 80. Tejada was the only suspect with braids in his hair. N.T., 11/9/12, at 70.

robberies, and she readily identified him as the gunman responsible for the robbery of Ms. Evans.[6]  N.T., 11/7/12, at 99.

We disagree with Tejada's assertion that **Commonwealth v. Grillasco**, 415 A.2d 1241 (Pa. Super. 1979), "is controlling," as it is readily distinguishable.  **See** Tejada's Brief at 42.  In **Grillasco**, the witnesses identified the defendant from a photo array that they were shown approximately a month after the crimes were committed.  **Grillasco**, 415 A.2d at 1242.  At trial, which occurred approximately two years after the crimes, the witnesses were unable to identify the defendant as the perpetrator.  Although he looked similar to the perpetrator, his appearance had changed, and they testified that they could not say with certainty that he was the person responsible.  **Id.** at 1242-43.  Following his conviction,

---

[6]  Tejada refers to the fact that Ms. Thurston testified only that she recognized the "picture," not that she recognized "the male in the picture." **See** Tejada's Brief at 42.  The exchange between the Commonwealth and Ms. Thurston occurred as follows:

> Q. Do you recognize that picture?
> A. Yes, I do.
> Q. Tell me.
> A. This is the guy with the gun.
> Q. Tell me what you recognize in that picture.
> A. His braids and his jawline.
>            *    *    *
> Q. Did you see that person on Mildred Street?
> A. Yes.

N.T., 11/7/12, at 99.  Despite the phrasing by the Commonwealth, it is clear that Ms. Thurston recognized Tejada, the person in the photograph, as the gunman that perpetrated Ms. Evans' robbery.

the defendant appealed and we reversed, finding that the photographic identification made two years prior to trial, which was the only evidence that linked the defendant to the crimes, was insufficient to prove his guilt beyond a reasonable doubt. *Id.* at 1243.

In the case at bar, there was far more evidence presented that connected Tejada to the robberies than a single photo identification that was remote from both the time of the crime and the time of trial. One witness identified Tejada in person as the perpetrator of one of the robberies on the night the robbery occurred, and he fit the physical description provided by another victim. At trial, the Commonwealth presented a photograph of Tejada from the night of the robberies and a witness identified him as being the perpetrator. Furthermore, when police began their investigation, Tejada was exiting the vehicle that the victims identified as the getaway car and which contained some of the proceeds of the robberies. As detailed above, the direct and circumstantial evidence presented sufficiently proved Tejada's involvement in the conspiracies to rob Ms. Orton and Ms. Evans.

In his arguments, Tejada attempts to parse the record in his own favor and urges us to find that the evidence was insufficient to prove that he was involved in these robberies on that basis. When viewed in the light most favorable to the Commonwealth, as our standard of review requires, we agree with the trial court that direct and circumstantial evidence presented at trial sufficiently proves that Tejada was the gunman in both of the

robberies. Thus, we have no basis for reversing his convictions of conspiracy to commit robbery.

In his second issue on appeal, Tejada contends that the trial court abused its discretion by finding that the verdict was not against the weight of the evidence. Tejada's Brief at 46-50. Like his sufficiency claim, Tejada challenges the weight of the evidence to support a finding that he was a party to the conspiracies to commit robbery. Tejada states that neither Ms. Orton nor Ms. Evans identified him as a participant in the robbery and that Ms. Thurston "was not certain" he was the gunman. Tejada's Brief at 49. Furthermore, because Ms. Thurston failed to identify him at the preliminary hearing or in person at trial, and when identifying him from his arrest photo, stated for the first time that she recognized his "jawline," her identification of him was too weak to warrant his conviction.[7] *Id.* at 48-50.

The trial court found that the jury's verdict was supported by the evidence and did not shock its sense of justice. Trial Court Opinion, 12/26/13, at 11-12. It found that Ms. Thurston's identification of Tejada was unwavering and that the jury was free to make its credibility

---

[7] Tejada also once again points to Ms. Thurston's testimony that she recognized "the picture" as opposed to "the male in the picture" when she identified him at trial using his arrest photo and claims that Ms. Thurston identified the other robbery suspect as having red trim on his collar, not Tejada. Tejada's Brief at 49-50. As we have already determined that these arguments are meritless, we need not address them again. ***See supra*** nn.5-6.

- 12 -

determinations and disregard any alleged inconsistencies in the testimony.

*Id.* at 12.

We review a weight of the evidence claim according to the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012) (citation omitted).

The record reflects that although Ms. Orton was unable to identify the gunman that robbed her, the circumstantial evidence proved that Tejada was the perpetrator of her robbery. He matched the height, build, skin tone and ethnicity she provided, which also matched the description of the same attributes provided by Ms. Thurston. *See* N.T., 11/7/12, at 40, 42, 89; N.T., 11/8/12, at 153-54. Ms. Thurston positively identified Tejada as the person who robbed Ms. Evans approximately twenty minutes after the robbery of

Ms. Orton. N.T., 11/7/12, at 90. When police took Ms. Thurston to identify the participants, she pointed out the two individuals to police. *Id.* at 89. Although she testified that she was one hundred percent sure about her identification of the taller man with the long object that approached her, and she did not use such strong language in her identification of Tejada, she did not give any indication that she was not certain of her identification of him. *See id.* at 90. To the contrary, she testified that his braids and his height triggered her ability to identify him as the person who robbed Ms. Evans. *Id.*

As the police arrived to investigate the robberies, they observed Tejada exiting the vehicle identified by all of the victims as the getaway car for the robbers. *Id.* at 88; N.T., 11/8/12, at 22-23. Ms. Thurston and Ms. Evans also saw the vehicle just prior to the robbery of Ms. Evans with a person fitting Tejada's description and Ms. Thurston's description of the perpetrator of Ms. Evans' robbery riding in the front seat. N.T., 11/7/12, at 76-77, 78-79, 80. Police recovered several items stolen from both Ms. Orton and Ms. Evans in the vehicle. *Id.* at 42.

The jury was made aware that Ms. Thurston did not identify Tejada at the preliminary hearing and observed Ms. Thurston's inability to identify him in person at trial. N.T., 11/7/12, at 91-92. The jury was also aware that Ms. Thurston noticed Tejada's jawline for the first time at trial when asked to make an identification from his arrest photograph. *Id.* at 121. It was

therefore the role of the jury to determine Ms. Thurston's credibility with respect to her identification of Tejada. *See Karns*, 50 A.3d at 165. The jury's decision to credit her testimony does not render the verdict contrary to the evidence presented. *See Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) ("Issues of witness credibility include questions of[, inter alia,] inconsistent testimony[.]").

We find no abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence. As such, Tejada is due no relief on this issue.

Tejada next asserts that the trial court erred by permitting Ms. Thurston to identify Tejada as the perpetrator of Ms. Evans' robbery using his arrest photograph. Tejada's Brief at 50-56. Tejada advances two arguments in support of this claim: (1) the photograph was the fruit of the unlawful show-up identification that occurred on the night of the robbery and (2) using the photograph to identify Tejada in court itself was improper. *Id.* at 53-56.

Beginning with his first argument, we note that this was not the basis for Tejada's objection to the admission of the photograph at trial. Rather, Tejada confined his arguments at trial to the suggestiveness of the photograph itself because of his belief that Ms. Thurston was "not sure" about her identification of Tejada on the night of the robberies and that the photograph was "not sanitized," as it was clear on the face of the

photograph that it was an arrest photograph. *See* N.T., 11/7/12, at 93-98. He never mentioned that he believed it was the fruit of an illegal show up identification on the night of the robberies. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012) ("New legal theories cannot be raised on appeal."), *appeal denied,* 57 A.3d 70 (Pa. 2012). Thus, Tejada waived the first argument made in support of this claim on appeal.

Turning to his second argument, the trial court found that Tejada's arrest photo was relevant and admissible, as Tejada changed his appearance prior to trial. Trial Court Opinion, 12/26/13, at 14. We agree, as it has long been the law "that where there has been a change in the appearance of a defendant, witnesses may identify him from photographs." *Commonwealth v. Duca*, 165 A. 825, 827 (Pa. 1933).

Tejada reiterates his belief that Ms. Thurston was unsure on the night of the crime whether Tejada was the person who robbed Ms. Evans, rendering the use of the photograph to identify him in court improper. Tejada's Brief at 55. As we have previously stated, however, the record does not support his contention that Ms. Thurston was unsure when she identified him as the robber. Tejada further states that the Commonwealth never asked Ms. Thurston if she was able to identify him in person at trial, and thus, the use of the photograph was impermissible. *Id.* at 56. The

record belies this contention as well. ***See*** N.T., 11/7/12, at 91-92 (in response to the Commonwealth's question of whether she can "identify anybody in court today" from the night of the robbery, Ms. Thurston stated, "No, I'm sorry.").

"The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion." ***Commonwealth v. Valcarel***, 94 A.3d 397, 398 (Pa. Super. Ct. 2014) (citation omitted). Finding no abuse of discretion, this issue does not warrant relief.

Tejada's final issue on appeal challenges discretionary aspects of the trial court's sentence.[8] This Court does not review such issues as a matter of right. "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). The appellant must satisfy all of the following:

---

[8] In his statement of questions involved, Tejada invokes the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution, both of which prohibit the imposition of cruel (and in the case of the Eighth Amendment, unusual) punishments. This would suggest that he was challenging the legality of his sentence. ***See Commonwealth v. Lawrence***, 99 A.3d 116, 122 (Pa. Super. 2014) ("claims pertaining to the Eighth Amendment's Cruel and Unusual Punishment Clause also pertain to the legality of the sentence and cannot be waived"). As noted hereinabove, Tejada does not develop his constitutional claim in the argument section of his brief; to the contrary, he concedes that he is challenging the discretionary aspects of his sentence. Tejada's Brief at 22 ("Appellant challenges the discretionary aspects of his sentence."). Thus, we do not address the legality of Tejada's sentence.

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied,* 86 A.3d 231 (Pa. 2014).

Our review of the record reveals that although Tejada raised in his 1925(b) statement all of the arguments he now seeks for us to review in support of his discretionary aspects of sentencing claim, he failed to do so at sentencing or in his post-sentence motion. **See** Post-Sentence Motions, 3/27/13, at ¶ 2 (challenging only the purported excessiveness of his sentence). In response to the Commonwealth's claim that the arguments raised on appeal, which go beyond a mere claim of excessiveness,[9] are therefore waived, Tejada relies upon the holding of ***Commonwealth v. Egan***, and states that because the trial court addressed the sentencing arguments in its Rule 1925(a) opinion, they are not waived. Tejada's Reply Brief at 6.

---

[9] Tejada raises four discretionary aspects of sentencing claims on appeal: (1) the sentencing court erroneously applied the sentencing guidelines; (2) the sentencing court was "dismissive" of his apology given at sentencing; (3) the trial court did not properly weigh the mitigating evidence and Tejada's rehabilitative needs in fashioning the sentence; and (4) the trial court erred by applying the deadly weapon enhancement to his sentence. **See** Tejada's Brief at 26-37.

In *Egan*, this Court reviewed the appellant's discretionary sentencing claim that the trial court erred by failing to state its reasons on the record for imposing the sentence despite the fact that the appellant failed to raise the argument either at sentencing or in a post-sentence motion. *Egan*, 679 A.2d at 237-38. The Court did so because the appellant raised the claim in his 1925(b) statement, the trial court addressed it in its written opinion, and the issue raised, although considered a "discretionary aspect of sentencing" issue, was not a matter within the trial court's discretion, but was a statutory mandate. *Id.* at 239; *see* 42 Pa.C.S.A. § 9721(b) ("In every case in which the court imposes a sentence for a felony or misdemeanor […] the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.").

Later that same year we decided *Commonwealth v. Clinton*. As in *Egan*, the appellant in *Clinton* raised discretionary sentencing claims on appeal that he failed to raise either at sentencing or in a post-sentence motion. *Clinton*, 683 A.2d at 391. The Court recognized the holding in *Egan*, but found that it was inapplicable, as the sentencing issues raised by Clinton "bear on the exercise of discretion by the trial court in choosing what sentence to impose and thus are unlike the challenge in *Egan*." *Id.* at 392. The *Clinton* Court found that where the issues raised assail the trial court's exercise of discretion in fashioning the defendant's sentence, the trial court

must be given the opportunity to reconsider the imposition of the sentence either through the defendant raising the issue at sentencing or in a post-sentence motion. *Id.* The failure to do so results in waiver of those claims. *Id.*

In 2004, an en banc panel of this Court decided *Commonwealth v. Melendez-Rodriguez*. In that case, the defendant failed to object to the admission of certain photographs presented at trial, but included a claim in his 1925(b) statement that the trial court erred by admitting the photographs. *Melendez-Rodriguez*, 856 A.2d at 1288. The trial court addressed this contention in its 1925(a) opinion. *Id.*

In an attempt to overcome a finding of waiver, the appellant relied upon case law that held: "When an issue is waived for failure to comply with post-trial procedural rules but the trial court chooses to overlook the error and addresses the issue, an appellate court is bound to do likewise." *Commonwealth v. Miller*, 765 A.2d 1151, 1155 (Pa. Super. 2001) (quoting *Commonwealth v. Perez*, 664 A.2d 582, 585 (Pa. Super. 1995)); *see Melendez-Rodriguez*, 856 A.2d at 1288. The *Melendez-Rodriguez* Court found that *Miller* and *Perez* were not good law and did not save an issue from waiver when the issue was not raised first in the trial court. In reaching this conclusion, we made clear that issues must be raised prior to trial, during trial, or in a timely post-sentence motion to be preserved for appeal. *Melendez-Rodriguez*, 856 A.2d at 1288-89. In direct contrast to

the **Egan** and **Clinton** decisions, the **Melendez-Rodriguez** Court found that "a party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." **Id.** at 1288 (citation omitted).

We are bound by the clear holding in the en banc panel's decision in **Melendez-Rodriguez**. **See** Pa.R.A.P. 3103(b) ("An opinion of the court en banc is binding on any subsequent panel of the appellate court in which the decision was rendered."). The portion of the holdings in **Egan** and **Clinton**, finding discretionary aspects of sentencing claims can be preserved when raised for the first time in a 1925(b) statement, which are contrary to the decision in **Melendez-Rodriguez**, were overruled by implication.

As Tejada preserved none of the arguments in support of his discretionary aspects of sentencing claim at sentencing or in his post-sentence motion, they are not subject to our review. **See Buterbaugh**, 91 A.3d at 1265; **Baker**, 72 A.3d at 662; **see also Commonwealth v. Rush**, 959 A.2d 945, 949 (Pa. Super. 2008) ("for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2015