J-S68018-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAHKEE WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 2293 EDA 2014 |

Appeal from the Judgment of Sentence February 4, 2011,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0008129-2008

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　**FILED DECEMBER 08, 2015**

Rahkee Williams ("Williams") appeals nunc pro tunc from the February 4, 2011 judgment of sentence entered by the Philadelphia County Court of Common Pleas.  Upon review, we affirm.

The trial court summarized the facts and procedural history of the case as follows:

> **FACTS**
>
> On April 1, 2008, [] Williams, along with co-defendants Kyle Brantley and Eric Thornton stole a large amount of marijuana, wallets and a car from victims Tariq Amin and Travis Simmons. Thornton, Brantley, and Williams were quickly apprehended by police and they had the incriminating evidence of the victims' wallets with them inside Brantley's house at 1254 Newkirk Street. As will be set forth in the discussion below, the police were alerted to the 1254 Newkirk Street address because of an earlier traffic stop in which the police saw the three defendants and the two victims together.

This court heard testimony from Renee Wiley, who owned 1254 Newkirk Street and is the mother of Williams' co-defendant, Kyle Brantley. From this testimony, this court concluded that on April 1, 2008, the day of the seizure at issue, defendant Williams had permission to be inside the house, that he was a guest of the home and, as an invitee of Brantley and Wiley, had a reasonable expectation of privacy in the residence.

Officer Johncola testified that he is a thirteen[-]year veteran of the Philadelphia Police Department and was on duty with his partner, on the night of April 1, 2008. At approximately 9:05 p.m., he observed a silver Mustang, driven by codefendant Brantley, double[-]parked on 52nd Street with traffic backing up behind it. After the Mustang had pulled back into the street, [Officer] Johncola moved the police car in front of a Buick Lucerne and a red Ford Edge[] that were immediately behind the Mustang, and pulled over the Mustang. The officers waved the Lucerne and the Edge around them, unsure as to whether or not the three vehicles were traveling together, and as the Lucerne and Edge vehicles passed, the officers saw that there were two black males in the Lucerne and two black males in the Edge. After those cars passed, [Officer] Johncola and his partner approached the silver Mustang driven by Brantley and asked Brantley for his vehicle's paperwork. Brantley was not issued a ticket and was released with a verbal warning for the traffic violation. Officer Johncola subsequently completed a report for the brief investigation, which included Brantley's address of 1254 South Newkirk Street in Philadelphia ("the 1254 residence").

Approximately thirty-five [] minutes after the car stop, Officer Johncola responded to a radio call in which the two individuals who they had previously seen inside the Edge (Travis Simmons and Tariq Amin) had been carjacked. Simmons and Amin recognized Officer Johncola and told him that the

individuals involved in the earlier traffic stop were the ones who carjacked them. Based upon this information, Officer Johncola went to the address listed in the paperwork for the car stop, the 1254 residence where co-defendant Brantley lived. Upon arrival at the residence, Officer Johncola saw both the Mustang and the Lucerne from the earlier traffic stop.

Once at the residence, the officers continued to get more information regarding the carjacking over the radio, including the update that a total of three black males were involved in the carjacking. After backup officers had arrived, they gained entry into the residence. As soon as Officer Johncola passed the entryway of the residence he detected a strong odor of marijuana. The officers first saw Brantley walking out from the kitchen and then two other males, later identified as Eric Thornton and [] Williams, came up from the basement. The officers asked everyone to sit on the couch in the living room, subsequently secured the property, and called for the Narcotics Field Unit. [While Williams was sitting on the couch, police observed him attempt to stuff a Buick key into the couch cushion.]

After the property had been secured, the officers called for the complainants, Travis Simmons and Tariq Amin. As the complainants sat in the police vehicle, officers escorted [] Brantley, Williams, and Thornton outside individually. They were each escorted out of the residence by a single officer, holding them at the back of the waist, and without handcuffs. A spotlight was used to illuminate each of their faces and all three co-defendants were identified by the complainants.

In response to the call to the Narcotics Field Unit from Officer Johncola, Officer Sumter responded to the 1254 residence. Officer Sumpter testified that he was[] an experienced narcotics officer having worked in the Narcotics Field Unit for the past twelve [] years. He also testified that upon his arrival shortly

after midnight, he smelled the odor of marijuana and subsequently recovered, from plain view, a brown and tan bag containing a large Ziplock bag of marijuana. Officer Sumter prepared a search warrant, specifying marijuana, United States currency, weapons, paraphernalia, tally books, and proof of residence, and returned to the 1254 residence to execute the warrant at approximately 4:00 a.m. on April 2, 2008.

In executing the search warrant, Officer Sumter recovered several black plastic bags containing marijuana[FN]2 from the kitchen. From the basement, he recovered a black and silver Taurus handgun with a magazine loaded with nine [] rounds, a letter addressed to co-defendant Brantley, a black leather wallet containing an ID, credit cards, and numerous documents for a Tariq Amin, and a black leather wallet with an ID for a Travis Simmons. Officer Sumter placed all of the bags of marijuana on one property receipt and the letter addressed to co-defendant Brantley was placed on another receipt that same day. Officer Sumter later prepared a third property receipt for the two wallets on May 19, 2008. The officer explained that guns, drugs, and currency must be placed on property receipt at the time they are recovered, but that paraphernalia and other items may be placed on receipt at a later time, provided that they are stored inside the safe at police headquarters. Officer Sumter also testified that he incorrectly listed the time of recovery of the wallets on the property receipt because, given the six[-]week delay, he had entered the time that the responding officers had arrived at the residence rather than the time the search warrant was actually executed.

_____

[FN]2 The officer's in-court testimony provided the following description:

From the kitchen area, a black plastic baggie containing one large clear baggie containing alleged marijuana. Another black plastic baggie

containing a large bag containing seven small clear baggies containing alleged marijuana. Another black police plastic bag containing one large clear bag containing alleged marijuana. And again seven smaller clear baggies containing alleged marijuana. N.T.[,] 5/5/2010[,] at 33[].

Trial Court Opinion, 3/11/15, at 4-7 (footnote in the original).

**PROCEDURAL HISTORY**

Prior to trial, Williams and his co-defendants[,] Kyle Brantley and Eric Thornton[,] presented a motion to suppress. This court heard testimony and argument and subsequently denied the motion. On May 5, 2010, Williams elected to exercise his right to a jury trial and pled not guilty to the above listed charges. On May 12, 2010, the jury found Williams guilty of [robbery, conspiracy to commit robbery of a motor vehicle, theft by unlawful taking, person not to possess firearm, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime]. At the conclusion of the trial, the case was continued to February 4, 2011 for sentencing. On February 4, 2011, this court sentenced Williams to [seven to fourteen] years of incarceration in a state facility for [r]obbery [] and [c]onspiracy [], to run concurrently, and [three to six] years of incarceration in a state facility for [carrying a firearm without a license], to run consecutively, for an aggregate sentence of [ten to twenty] years of incarceration. He received no further penalty on the remaining charges. On February 9, 2011, Williams filed a post-sentence motion, which this court denied on March 2, 2011.

On March 2, 2012, Williams filed a PCRA petition. PCRA counsel was appointed and, on December 6, 2013, counsel filed an [a]mended [p]etition. The matter was first listed before this court for decision on July 10, 2014. On July 10, 2014, following a review of the record, this court granted Williams'

> petition to reinstate his appellate rights nunc pro tunc.

*Id.* at 2.

Following the reinstatement of his direct appeal rights, Williams filed a timely notice of appeal and complied with the trial court's order for the filing of a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, he raises the following issues for our review, which we reordered for ease of disposition:

> [1.] Did the trial court err in not addressing, and therefore in effect, denying [Williams'] Rule 600 [m]otion?
>
> [2.] Did the trial court err in allowing the admission of evidence not provided in discovery and turned over to defense counsel on the day of trial, over two [] years after the arrest?
>
> [3.] Did the trial court err in not finding that the prosecutor committed gross prosecutorial misconduct by continually eliciting whether Detective Baker believed the complainants were victims, thereby attempting to bolster their credibility?
>
> [4.] Did the trial court err in not finding [that] the charges were not [sic] against the weight of the evidence?
>
> [5.] Did the trial court err in finding the evidence was insufficient [sic] to show, as a matter of law that [Williams] was guilty of [c]riminal [c]onspiracy to [e]ngage in [r]obbery of a [m]otor [v]ehicle[] where there was no evidence, either direct or circumstantial, that there was a plan to take the motor vehicle and no defendant was convicted of robbery of a motor vehicle?

- 6 -

[6.] Did the trial court err in finding [that the] evidence was insufficient [sic] to show, as a matter of law, that [Williams] was guilty of [the crimes for which he was convicted] where the testimony was so contradictory and impeached on cross-examination to the point of not being worthy of belief?

[7.] Did the trial court err in the discretionary aspects of sentencing[] where the sentencing court failed to consider mitigating factors and exceeded that which was necessary to insure the rehabilitative needs of [Williams] as well as the protection of society?

Williams' Brief at 8-9.

## **Rule 600**

In his first issue on appeal, Williams contends that the trial court violated his right to a speedy trial pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure, and the trial court abused its discretion by denying his motion to dismiss the charges. Williams' Brief at 28-30. The trial court states that although Williams filed a Rule 600 motion, he never presented the motion for disposition before the court, rendering his claim moot. Trial Court Opinion, 3/11/15, at 7.

In evaluating a Rule 600 claim, we review a trial court's ruling thereon, in the light most favorable to the prevailing party, for an abuse of discretion. *Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015). "Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." *Id.* (citation omitted).

The record in the case at bar reflects that Williams filed his Rule 600 motion on April 30, 2010, but, as stated by the trial court, that the motion was never presented to the trial court for decision. Although he includes a passing reference in his statement of questions involved that the trial court "in effect" denied his Rule 600 motion by failing to rule upon it, his argument in support of this issue contains no recognition or reference to his failure to present the motion for adjudication. **See** Williams' Brief at 8, 28-30. Rather, his sole argument made in support of the issue in his brief on appeal is that the charges should have been dismissed pursuant to Rule 600. **Id.** at 28-30. As the trial court did not render a decision on this motion, and there was no hearing held, we have no basis to grant Williams relief on the argument presented. **See Roles**, 116 A.3d at 125.

**Suppression of Evidence**

In his second issue on appeal, Williams asserts that the trial court erred by failing to suppress a police report and a property receipt that included the victims' wallets as a sanction for the Commonwealth's discovery violation, as the Commonwealth did not turn the evidence over to the defense until two years after Williams' arrest. Williams' Brief at 30-31. Williams cites no law in support of his contention that suppression was required, let alone warranted, under the circumstances. **See id.**; **see also** Pa.R.Crim.P. 573(E) (identifying potential remedies for discovery violations); **Commonwealth v. Smith**, 955 A.2d 391, 394 (Pa. Super. 2008)

("decisions involving discovery in criminal cases lie within the discretion of the trial court"). As such, this argument is waived. ***Commonwealth v. Janda***, 14 A.3d 147, 164 (Pa. Super. 2011); Pa.R.A.P. 2119(a)-(c).

**Prosecutorial Misconduct**

Williams next asserts that the trial court erred by failing to grant a mistrial after the prosecutor committed misconduct by improperly vouching for a Commonwealth witness. Williams' Brief at 19. The alleged misconduct by the prosecutor stemmed from the following portion of the direct examination of Detective Baker, a Commonwealth witness:

> Q. Did you have any idea why Tariq Amin and Travis Simmons were here in Philadelphia?
>
> A. No.
>
> Q. Did you believe them when they told you they had gone to New York to buy clothes and got lost looking for family?
>
> A. At first, but not when I compared -- … [n]ot after I compared both their interviews together, I don't believe that's what occurred.
>
> Q. Do you believe they were victims of crime?
>
> [Counsel for Williams]: Objection.
>
> [Counsel for Brantley]: Objection.
>
> [Counsel for Thornton]: Objection.
>
> The Court: My jury, you now all along what's going on, right? You're the one to tell us what you think. This officer obviously believed that there was enough to make an arrest, right? That's why he's a police

officer. That's why he's a detective. … Remember when you walked in and I said an arrest is an arrest, the fact that these three defendants were sitting here at trial. All that is, is they have a presumption of innocence that continues all the way until now, all the way until the time that you hear my instructions on the law, until you go back and deliberate. It makes no difference what any of us think – me, the detective, the attorneys, none of us, about who to believe or not to believe, who was arrested, who wasn't arrested, who everybody else says is a victim or isn't a victim, what was recovered, none of that. All of that is your decision, okay? But the officer's allowed to tell you what went into his decision, okay? And you judge his credibility like you judge everybody else's. Do you understand that? He's only telling you what he did. Very well. … He may give you the information that went into his calculation of what he did.

By [The Prosecutor]:
Q. Go ahead. Give us that information.

A. I believe they were victims of crime, yes.

[Counsel for Brantley]: Objection.

[Counsel for Thornton]: Move to strike that.

[Counsel for Brantley]: Move to strike that.

The Court: I've told my jury very well. He may have thought it. I may think differently, the district attorney may think differently, the defense lawyers may think differently, everybody in the audience may thing another thing, okay? It doesn't matter. It's only what you think.

N.T., 5/11/10, at 74-77.

The law is clear: "In order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection **and** move for a

- 10 -

mistrial." ***Commonwealth v. Sasse***, 921 A.2d 1229, 1238 (Pa. Super. 2007) (emphasis added). The record reflects that Williams failed to move for a mistrial. As such, the issue is not preserved for our review.

**Weight of the Evidence**

In his fourth issue on appeal, Williams asserts that his convictions were against the weight of the evidence presented. Williams' Brief at 31-33. According to Williams, the testimony of the victims regarding the events that led up to the robbery and occurred thereafter were clear fabrications,[1] making it "an impossibility, when reviewing the record, to determine what parts of their stories were fabricated and which ones were not." ***Id.*** at 32. Williams therefore argues that "[b]ecause Simmons and Amin presented fabrications of events throughout the day, both before the incident and after the incident, finding that they sandwiched between these fabrications truthful testimony regarding the alleged incident is 'so contrary to the evidence as to shock one's sense of justice.'" ***Id.*** at 33.

The trial court found that the jury properly performed its function and assessed the credibility of the witnesses presented, as instructed by the trial

---

[1] This testimony included claims that the victims drove from Richmond, Virginia to Queens, New York, spent time visiting with family and window-shopping, and then drove to Philadelphia and dropped off a friend of the family there, all within a six-to-eight-hour timeframe. Williams' Brief at 32; ***see*** N.T., 5/5/10, at 199-202; N.T., 5/6/10, at 6, 18. The victims also testified that after they provided their statements to the police about the robbery, the police took approximately $5000 from them that the robbers did not find and said, "Welcome to the City of Brotherly Love." N.T., 5/6/10, at 34, 173.

court. Trial Court Opinion, 3/11/15, at 17-18. Noting that a weight of the evidence claim requires consideration of all of the evidence presented, the trial court stated: "Although this court acknowledged the inconsistencies in the victims' testimony, this court cannot isolate victim testimony from the testimony provided by the six Philadelphia police officers and three police detectives, as well as all other material evidence admitted at trial." *Id.* at 18. It thus concluded that "the jury verdict, reflecting the jury's assessment of the weight of the evidence, was not so contrary to the evidence presented at trial as to 'shock one's sense of justice.'" *Id.*

When reviewing a challenge to the weight of the evidence, we are mindful of the following:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Tejada*, 107 A.3d 788, 795-96 (Pa. Super. 2015) (citation omitted).

- 12 -

The record reflects that Amin and Simmons presented highly questionable, and in some instances, contradictory testimony regarding the events of the day that led up to the robbery and that occurred thereafter. *See* N.T., 5/5/10, at 199-202; N.T., 5/6/10, at 6, 18, 34, 173, 198-99; N.T., 5/11/10, at 58-59. Furthermore, their statements to the police about what occurred prior to the robbery were inconsistent with each other. *See* N.T., 5/11/10, at 55-56. What occurred during the robbery, as related by both Simmons and Amin, however, remained consistent from the time they spoke with police immediately after the robbery through their testimony at trial. *See* N.T., 5/5/10, at 203-213, 219-20, 223-24; N.T., 5/6/10, at 30, 145-46, 152-54, 158, 160-62, 181-83, 185-86; N.T., 5/11/10, at 51-53. The evidence found by police and presented at trial corroborated their testimony about the robbery, including the victims' wallets and the guns used to perpetrate the robbery. *See* N.T., 5/5/10, at 213-15, 236-37; N.T., 5/6/10, at 157, 160-61; N.T., 5/11/10, at 68-71.

"This Court cannot substitute its judgment for that of the jury on issues of credibility." *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). The trial court, which had the benefit of sitting through the trial and observing the witnesses as they testified, determined that the jury's verdict was not contrary to the evidence and did not shock its sense of justice. Based upon the record before us, we find no abuse in the trial court's exercise of discretion in this manner.

**Sufficiency of the Evidence – Conspiracy to Commit Robbery of Motor Vehicle**

In his fifth issue, Williams asserts that there was insufficient evidence to convict him of conspiracy to commit robbery of a motor vehicle. Williams' Brief at 18-19. Williams contends that "the individual that took the vehicle did so based upon a spontaneous decision that taking the vehicle would make it more difficult to be identified in a timely manner." **Id.** at 18. In other words, Williams asserts that because there was no evidence of a predetermined agreement between Williams, Brantley and Thornton that one of them would take the vehicle, the evidence did not sufficiently establish a conspiracy to steal the car.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is de novo and our scope of review is plenary." **Tejada**, 107 A.3d at 792 (citation omitted).

> We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* (citations omitted).

The Pennsylvania Crimes Code defines criminal conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). This requires proof that the defendant: 1) entered into an agreement with another to commit or aid in the commission of a crime; 2) shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. *Commonwealth v. Rogal*, 120 A.3d 994, 1001 (Pa. Super. 2015). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa. Super. 2002) (citation omitted).

The pertinent portion of the record in the case before us reflects that Williams and Thornton approached Simmons and Amin with guns drawn while the victims were sitting in their rented Ford Edge. Williams and Thornton ordered the victims out of the car and had them lie face down on the sidewalk while Williams and Thornton riffled through their back pockets and stole their wallets and cellphones. N.T., 5/5/10, at 211-16; N.T., 5/6/10, at 153-57, 160-61. Thereafter, either Williams or Thornton yelled, "Take the truck." N.T., 5/6/10, at 158. At that, either Williams or Thornton jumped into the Ford Edge and drove off, while the other perpetrator ran around the block. N.T., 5/5/10, at 219-20. Brantley was "waiting" and "on the phone" while the robbery occurred. N.T., 5/6/10, at 158.

Viewing the testimony in the light most favorable to the Commonwealth, it is clear that Williams either instructed Thornton to steal the Ford Edge, or complied with Thornton's instruction to steal the vehicle. Either way, they agreed that one of them would steal the car, with a shared criminal intent, and one of them committed the overt act of actually taking the car in furtherance of their agreement. *See Rogal*, 120 A.3d at 1001; *Murphy*, 795 A.2d at 1038. Therefore, the evidence was sufficient to convict Williams of conspiracy to commit theft of a motor vehicle.

**Sufficiency of the Evidence – All Convictions**

In his sixth issue, Williams asserts that the evidence was insufficient to support any of his convictions because the testimony of the victims was

contradictory and impeached on cross-examination, rendering it unworthy of belief. Williams' Brief at 23-26. It is well settled that "[a]n argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014). Williams contends, however, that "[t]he testimony of the witnesses in this matter was so untrustworthy as to render their testimonies beyond belief." Williams' Brief at 25. In support of his argument he cites to our Supreme Court's decisions *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993) and *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976).

In *Farquharson*, our Supreme Court stated the following:

> Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.
>
> On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.
>
> This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence

offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding. **Commonwealth v. Bennett**, [] 303 A.2d 220 ([Pa. Super.] 1973) (and cases cited therein). Appellant argues that the **Bennett** principle is applicable here. We do not agree.

The **Bennett** principle is applicable only where the party having the burden of proof presents testimony to support that burden which is either so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason. In the facts of the **Bennett** case, the Commonwealth had predicated its case upon the evidence of one individual. The record clearly established that the testimony of that witness was so contradictory as to render it incapable of reasonable reconciliation and therefore the court properly refused to allow a verdict of guilt to stand.

**Farquharson**, 354 A.2d at 550 (most internal citations omitted).

Our High Court applied the above holding of **Farquharson** in **Karkaria** to reverse the appellant's conviction of forcible rape. In **Karkaria**, the appellant was charged by private criminal complaint based upon his alleged rape of his younger stepsister. **Karkaria**, 625 A.2d at 1167. At trial, the Commonwealth's case rested entirely upon the testimony of the fourteen-year-old alleged victim, who testified that the rapes occurred on weekends when her mother and stepfather were out and the appellant was babysitting her. **Id.** at 1168. She denied that her other stepbrother, the appellant's biological brother was in the house at the time. **Id.** It was uncontested, however, that pursuant to the custody arrangement between

the appellant's parents, the appellant and his brother were always in the home on the same weekends. *Id.* It was likewise uncontested that the alleged victim's mother and stepfather only went out on the weekends. *Id.* at 1171. Moreover, although the alleged victim testified that the rapes occurred when the appellant babysat her, she also acknowledged that during the timeframe of the alleged rapes, she was old enough to watch herself and the appellant no longer acted as her babysitter. *Id.* at 1168. The Commonwealth presented no physical evidence or reports made regarding the alleged rapes. *Id.* at 1169, 1171.

The *Karkaria* Court concluded:

> The total failure of the Commonwealth to present any evidence that a single act of intercourse occurred during the [timeframe alleged] casts serious doubt upon the jury's ability to reasonably conclude that any criminal activity occurred during the time period charged.
>
> *       *       *
>
> [Therefore,] we are compelled to conclude that the evidence presented at trial when carefully reviewed in its entirety, is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law. Having reached this conclusion after careful and meticulous review of the record presented to this Court, we find that the verdict of the jury was not based on anything more than speculation and conjecture.

*Id.* at 1171-72 (footnote omitted).

Contrary to Williams' argument, this does not mean that any case involving allegedly contradictory or inconsistent testimony warrants consideration (let alone reversal) on sufficiency grounds. Rather, as our Supreme Court stated in **Commonwealth v. Brown**, 52 A.3d 1139 (Pa. 2012), "the critical inquiry" in resolving a sufficiency claim is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review **all of the evidence** is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
>
> [A] reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Id.* at 1163-64 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 326 (1979) (emphasis in the original)).  The *Brown* Court clarified that despite its holding in *Karkaria*,

> [The] Court considers questions regarding the reliability of the evidence received at trial to be within the province of the finder-of-fact to resolve, and our Court will not, on sufficiency review, disturb the finder-of-fact's resolution except in those exceptional instances, as discussed previously, where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence.

*Id.* at 1165.

The case before us is not one that involves evidence that "is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." *Id.*  As stated above, the victims' testimony regarding their whereabouts before they were robbed and the events that occurred with the police following the robbery was of questionable credibility.  The testimony provided regarding the events at the time of the robbery, however, was not only consistent between the two victims' testimony, but also was supported by corroborating evidence. *See DeJesus*, 860 A.2d at 107 (finding *Farquharson* inapplicable where the testimony of the two victims regarding "the crucial events" of the crime was consistent and largely corroborated by other evidence).  As such, the question presented challenges the weight of the evidence to support Williams' convictions, *see Melvin*, 103 A.3d at 43, which, as we have

already stated, was properly decided by the trial court. As such, no relief is due.

**<u>Sentencing</u>**

Williams' final issue on appeal challenges the discretionary aspects of his sentence, which, as Williams recognizes, is not appealable as of right. *See* Williams' Brief at 26-27. Rather, "[a]n appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Tejada*, 107 A.3d at 797 (Pa. Super. 2015) (citation omitted). This requires the appellant to satisfy all of the following:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Id.* (citation omitted).

The certified record on appeal reveals that Williams raised in a post-sentence motion the issue he now seeks for this Court to review and timely filed his notice of appeal. He also included a 2119(f) statement in his brief, claiming that the trial court failed to consider mitigating factors when

sentencing Williams in the aggravated range,[2] resulting in a sentence that exceeded the time necessary to meet his rehabilitative needs. Williams' Brief at 7. Williams' 2119(f) statement consists of two sentences and does not contain any citation to authority to support a finding that the issue raised constitutes a substantial question for our review or setting forth the provision of the sentencing code violated by his sentence. *See* Williams' Brief at 7. Although Williams cites case law in the argument section of his brief that indicates that the issue presents a substantial question for our review, *see id.* at 27, the law is clear:

> We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. … [O]nly where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Commonwealth v. Hill*, 66 A.3d 365, 368 (Pa. Super. 2013) (citation omitted).

The Commonwealth did not file a timely responsive brief in this appeal, and we therefore do not consider its objection to Williams' deficient 2119(f)

---

[2] The record reflects that the trial court sentenced Williams in the aggravated range for his robbery conviction. N.T., 2/4/11, at 33-34.

statement and elect to review the issue raised.[3] ***See Commonwealth v. Archer***, 722 A.2d 203, 211 (Pa. Super. 1998) (en banc) ("If an appellant fails to comply with R.A.P. 2119(f) and appellee fails to object, this Court may review appellant's claims with regard to the discretionary aspects of sentence."). As Williams raises a substantial question for our review, ***see Commonwealth v. Felmlee***, 828 A.2d 1105, 1107 (Pa. Super. 2003) (en banc), we proceed to review the merits of the issue raised.

We review a discretionary sentencing challenge for an abuse of discretion. ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (en banc). An abuse of discretion requires the appellant to prove, based on the record, "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Id.*** (citation omitted).

As stated above, Williams contends that the trial court abused its discretion by failing to consider mitigating factors that should have

---

[3] On June 9, 2015, the date the Commonwealth's responsive brief was originally due in this matter, the Commonwealth requested an extension of time to file its brief until August 10, 2015. We granted that request. It failed to do so. Instead, on August 10, 2015, the Commonwealth sought a second extension, requesting a briefing deadline of September 24, 2015. We once again granted the Commonwealth's petition and included a notation indicating that absent extraordinary circumstances, this Court would not grant any additional extensions. Order, 8/11/15. The Commonwealth did not file any additional requests for time extensions and also failed to file its responsive brief until a month after its second extended deadline. We therefore did not consider the Commonwealth's untimely-filed brief in reaching our decision. ***See Commonwealth v. Tisdale***, 100 A.3d 216, 217 n.4 (Pa. Super. 2014), *appeal denied,* 113 A.3d 280 (Pa. 2015).

decreased his sentence, including "the details of his upbringing, which included living in an environment of drug and alcohol addiction[;] … the developmental issues that come with being brought up this way[;] … [and that Williams] also suffered an extreme loss as an adult, when his brother was murdered."  Williams' Brief at 28.  The record reflects, however, that the trial court had the benefit of a presentence investigation report when sentencing Williams.  N.T., 2/4/11, at 34.  "When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence."  *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013), *appeal denied,* 86 A.3d 231 (Pa. 2014) (citation omitted).  As such, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2015