J-S39020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON EDWARD WILSON | : | |
| | : | |
| Appellant | : | No. 732 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 16, 2022
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000143-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: MARCH 7, 2023**

Brandon Edward Wilson ("Appellant") appeals from the judgment of sentence of 9 to 24 months' incarceration imposed after he was convicted of one count each of endangering the welfare of a child ("EWOC"),[1] simple assault,[2] and harassment.[3] Appellant challenges the sufficiency of the evidence to sustain his EWOC conviction and alleges the verdict on this charge is against the weight of the evidence. He also challenges the admission into evidence of out-of-court statements made by the child victim. We affirm.

---

[1] 18 Pa.C.S. § 4304(a).

[2] 18 Pa.C.S. § 2701(a)(1).

[3] 18 Pa.C.S. § 2709(a)(1).

The aforementioned charges stem from a ChildLine[4] referral received by Pennsylvania State Trooper Tyler Arbogast on May 7, 2021, alleging that a minor victim, N.W.S. ("Child") (born in April of 2010), was being physically abused by Appellant.[5] Affidavit of Probable Cause, 5/26/21, at 1. In response to the ChildLine referral, Trooper Arbogast interviewed Child and her biological father, N.S. ("Father"). Subsequently, on May 7, 2021, the Commonwealth filed a criminal complaint against Appellant, charging him with the following offenses: strangulation,[6] EWOC, simple assault, and harassment. **See** Complaint, 5/26/21, at 1-4. The criminal information indicated that between January 1, 2020 and May 26, 2021, Appellant "place[d] his hands around the neck of [Child] … to choke her," and "on numerous occasions, [Appellant struck Child,] …, pulled her hair, picked [her] up and slammed her to the ground, [and] held her hands behind her back while [he] struck her with a belt[.]" Criminal Information, 6/11/21, at 1.

A jury trial was held on February 11, 2022, at which Child's mother, S.W. ("Mother"), grandmother, D.W. ("Grandmother"), and Father testified on behalf of the Commonwealth. The Commonwealth also produced Trooper

---

[4] ChildLine operates a statewide system for receiving reports of suspected child abuse, referring the reports for investigation and maintaining the reports. 23 Pa.C.S. § 6332.

[5] Appellant is Child's stepfather.

[6] 18 Pa.C.S. § 2718(a)(1).

Arbogast, Trooper Jessica Naschke,[7] and Union County Children and Youth Services ("CYS") caseworker, Megan Jones, as witnesses. Prior to the trial, the trial court found Child "unavailable as a witness," pursuant to Pennsylvania's Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S. § 5985.1, and granted the Commonwealth's motion *in limine*, permitting certain out-of-court statements made by Child regarding Appellant's actions to be admitted at trial. After considering all of the evidence presented, Appellant was convicted of EWOC, simple assault, and harassment.[8] The trial court sentenced Appellant on March 16, 2022, to an aggregate term of 9 to 24 months' incarceration.

Appellant filed a post-sentence motion for relief, which was denied by the trial court on May 6, 2022. That same day, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court issued its Rule 1925(a) opinion on July 1, 2022, in which it incorporates its May 6, 2022 opinion, as well as the notes of testimony from the February 9, 2022 motion *in limine* hearing and the February 11, 2022 jury trial. Appellant now presents the following claims for our review:

1. Did error occur in granting the Commonwealth's Motion *in Limine* pursuant to 42 Pa.C.S. [§] 5985.1[,] as there was no

---

[7] Trooper Naschke works with the Criminal Investigative Unit of the Pennsylvania State Police and assisted Trooper Arbogast with interviewing the Child in this matter. N.T. Trial, 2/11/22, at 62.

[8] Appellant was acquitted of the strangulation charge.

way to determine that the possibility of testimony caused the subject child's reluctance?

2. Did error occur as the evidence was insufficient to convict, specifically where the Commonwealth did not establish each alleged act of violence "on numerous occasions…" as claimed in Count Two of the Criminal Information?

3. Did error occur as the verdict was against the weight of the evidence, specifically where the claims of abundant physical violence did not comport with the minimal examples of purported injury?

Appellant's Brief at 5.

## I.     Motion *in Limine*

In his first issue, Appellant challenges the trial court's evidentiary ruling regarding the Commonwealth's motion *in limine*.

> A trial court's decision to grant or deny a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." [**Commonwealth v. Reese**, 31 A.3d 708, 715 (Pa. Super. 2011) (*en banc*)].
>
>> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. **Commonwealth Financial Systems, Inc. v. Smith**, 15 A.3d 492, 496 (Pa. Super. 2011) (citing **Stumpf v. Nye**, 950 A.2d 1032, 1035-36 (Pa. Super. [2007])). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Grady v. Frito-Lay, Inc.**, … 839 A.2d 1038, 1046 (Pa. 2003).
>
> **Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.**, 77 A.3d 1, 11 (Pa. Super. 2013). In addition, "to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Winschel v. Jain**, 925 A.2d 782, 794 (Pa. Super. 2007) (citing **McClain v. Welker**, 761 A.2d 155, 156 (Pa. Super. 2000)).

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014).

Here, the Commonwealth filed a motion *in limine* requesting that the trial court allow for admission at trial certain out-of-court statements made by Child,[9] pursuant to the TYHA, which provides, in relevant part:

**(a) General rule.—**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A)    testifies at the proceeding; or

(B)    is unavailable as a witness.

…

**(a.1) Emotional distress**.—In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

---

[9] The Commonwealth sought to introduce as evidence statements that Child made to her Mother and Grandmother, as well as to Trooper Naschke and Ms. Jones, regarding Appellant's abusive acts towards her. Motion *in Limine*, 2/3/22, at 1-2 ¶¶2, 4.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S. § 5985.1(a), (a.1).

Appellant claims that the trial court misapplied the TYHA in granting the Commonwealth's motion *in limine* and that, in doing so, denied Appellant the opportunity to confront his accuser. Appellant's Brief at 10. He argues:

While the … [C]hild was undeniably recalcitrant, there was no way to determine that the possibility of testimony caused her reluctance. Based on [Mother's] testimony, the [Child] was reluctant to interact with anyone. Testimony would not cause serious emotional distress and impair her ability to communicate; that was her very nature. While that fact may be uncomfortable, it is not something that should preclude an accused from a fair opportunity to confront his accuser.

***Id.*** at 9-10. No relief is due on this claim.

As our Supreme Court explained in ***Commonwealth v. Walter***, 93 A.3d 442 (Pa. 2014):

Under the TYHA, an out-of-court statement of a child … victim or witness who is [sixteen] years old or younger,[10] is admissible into evidence in a criminal or civil proceeding if two requirements are satisfied. First, the trial court must find that the evidence is relevant and that the time, content, and circumstances of his statement provide sufficient indicia of reliability. Second, the child must either (1) testify at the proceeding, or (2) be deemed unavailable as a witness. 42 Pa.C.S.[] § 5985.1(a)(2)(i), (ii). In order for the child to be deemed unavailable to testify as a witness, "the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially

---

[10] At the time of the ***Walter*** decision, the TYHA applied to child victims 12 years of age or younger. The TYHA was amended effective August 30, 2021, to include child victims 16 years of age or younger. ***See*** 2021, June 30, P.L. 172, No. 29 § 1.

impair the child's ability to reasonably communicate." [42 Pa.C.S.] § 5985.1(a.1). In making this determination, the court may (1) observe and question the child, either inside or outside of the courtroom; and (2) hear testimony of the child's parent or custodian or any other person who has dealt with the child in a medical or therapeutic setting. [42 Pa.C.S.] § 5985.1(a.1)(1), (2). The TYHA does not require that a trial court's determination of unavailability be supported by expert testimony.

**Walter**, 93 A.3d at 454.

In the case *sub judice*, Appellant does not contest Child's qualifying age under the statute or the reliability of her statements. Rather, Appellant only attacks the trial court's determination that Child was unavailable as a witness. **See** Appellant's Brief at 8-10. Thus, our analysis is limited to the trial court's finding that Child's statements were admissible at trial under the TYHA, "as … [C]hild was totally uncommunicative during the [c]ourt's in camera review with her." Trial Court Order, 2/9/22 (single page).

At a hearing on February 9, 2022 ("TYHA Hearing"), the trial court heard testimony from the victim's Mother and CYS caseworker, Ms. Jones, which the Commonwealth summarizes as follows:

[Mother] testified first at the hearing…. [She] explained that [Child] was an 11-year-old with expressive language disorder, which affected [her] ability to learn and express herself. According to [Mother], [Child] became "stressed out" and experienced "anxiety" when [she] knew she had to come to the courthouse and exhibited other physical mannerisms that indicated to [Mother] that [Child] was experiencing stress. While leaving the courthouse after meeting with attorneys for the Commonwealth and a [CYS] worker, [Child] was crying in the elevator. When asked about the likely effect on [Child] of testifying, [Mother] thought [Child] would have an "anxiety attack" and a "meltdown." [Mother] did not think that [Child] would be able to communicate with a jury. When questioned by the court about whether [Child] could come into the courtroom

- 7 -

and function, [Mother] testified: "I really don't think she'll be able to come in here in front of everybody and sit here and answer questions."

[CYS] caseworker[,] Megan Jones[,] testified next at the hearing…. [Ms.] Jones was familiar with [Child] and spoke to [her] at the family home on May 5, 2021[,] … for approximately 15 minutes…. [Ms.] Jones also spoke to [Child] a few weeks after the May 5, 2021 meeting. [Ms.] Jones further explained that [Child] was "not forthcoming with information at all" during a recent meeting with [Child] and a prosecutor in the courthouse in preparation for trial. [Ms.] Jones thought that [Child's] testifying would be "traumatic" and did not believe [Child] could communicate with a jury and answer questions.

Commonwealth's Brief at 6-7 (citations to record omitted).

The Honorable Dudley N. Anderson then conducted an in camera evaluation of Child in the jury room, after which he stated from the bench:

[Child] represented, I believe, as difficult a situation as I have ever seen. I think there was one verbal response, and it was almost non -- it was very, very softly spoken, and it was the name of her school. She did nod her head at a couple of things that I said; but as soon as I turned to anything having to do with talking about things, she stopped communicating. There was no communication. Even when I asked her, "Do you want to leave?" she wouldn't communicate. I think she was probably dying to say, yeah, get me out of here; but she wouldn't communicate it to me.

Now, I don't think that anybody that was in there has any doubt that if we brought her in here Friday and put her on the stand that anybody would get an answer out of her. And I believe, and I don't think it's a stretch, that she is unavailable as a witness; and, therefore, I believe that the statements qualify under 42 Pa.C.S. [§] 5985.1[,] as admissible.

N.T. TYHA Hearing, 2/9/22, at 36-37. *See also id.* at 33 (Judge Anderson's describing Child as "practically catatonic" and explaining that she meets the definition of "unavailable as a witness" under the TYHA). We conclude that

the record contains sufficient evidence to support the trial court's determination, and we discern no abuse of discretion.

## II. Sufficiency of the Evidence

In his second issue, Appellant challenges the sufficiency of the evidence to sustain his EWOC conviction.[11] Our standard of review is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (citation omitted).

Section 4304 of the Crimes Code defines the crime of EWOC and addresses the grading of this offense, in relevant part, as follows:

**(a) Offense defined.—**

---

[11] We deem any sufficiency claim regarding Appellant's simple assault and harassment convictions to be waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Wirth v. Commonwealth*, 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.").

> > (1) A parent, guardian or other person supervising the welfare of a child[12] under 18 years of age … commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.
> >
> > …
>
> **(b) Grading.—**
>
> > (1) Except as provided under paragraph (2), the following apply:
> >
> > > (i) An offense under this section constitutes a misdemeanor of the first degree.
> > >
> > > (ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.
> > >
> > > …
> >
> > (2) The grading of an offense under this section shall be increased one grade if, at the time of the commission of the offense, the child was under six years of age.

18 Pa.C.S. § 4304(a)(1), (b). Section 4304 is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted. ***Commonwealth v. Vela-Garrett***, 251 A.3d 811, 815 (Pa. Super. 2021) (citation omitted).

Here, Appellant's claim is limited to a challenge of the sufficiency of the evidence to support the grading of his EWOC conviction as a third-degree

---

[12] "[T]he term 'person supervising the welfare of a child' means a person other than a parent or guardian that provides care, education, training or control of a child." 18 Pa.C.S. § 4304(a)(3).

felony, pursuant to Section 4304(b)(1)(ii).[13]  The crux of his argument is that the Commonwealth failed to meet its burden to establish that each alleged act of violence occurred "on numerous occasions[.]"  Appellant's Brief at 10-11 (emphasis added).  In support of his position, he states:

> Count Two of the [c]riminal [i]nformation filed against Appellant alleges that he "did on numerous occasions, strike [the] victim, … pulled her hair, picked the victim up and slammed her to the ground, held her hands behind her back while [Appellant] struck her with a belt…[.]"  In reviewing the actual phrasing of the Commonwealth[, Appellant] was accused of committing all these acts on multiple occasions.  This required testimony that all of these acts occurred more than once.  That was not attested to by any of the witnesses.

*Id.* at 11-12 (citations to record omitted).  Appellant's claim lacks merit.

The phrase "course of conduct" is used in the EWOC statute to differentiate the penalties for single and multiple endangering acts. *Commonwealth v. Kelly*, 102 A.3d 1025, 1031 (Pa. Super. 2014) (noting that the use of the phrase "course of conduct" imposes a requirement of multiple acts over time).  In reviewing Appellant's claim, the trial court expressly concluded that "[t]he evidence presented at trial was sufficient to demonstrate [Appellant's] actions occurred on multiple occasions."  Trial Court Opinion ("TCO I"), 5/2/22, at 2.  In support of its determination, the trial court noted, "Trooper … Arbogast testified to abuse occurring on multiple occasions as reported by the victim."  Trial Court Opinion ("TCO II"), 7/1/22, at 2

---

[13] As Appellant does not contest the sufficiency of the evidence to establish any of the elements of EWOC under Section 4303(a), we deem any such claim to be waived.  *See* Pa.R.A.P. 2116(a).

(unnumbered). ***See also*** N.T. Trial at 74-75 (Trooper Arbogast's referencing his notes in which he documented Child's report of abuse on approximately ten occasions).

Moreover, Mother testified to witnessing Appellant's choking Child "three times" and described two of the incidents in detail. ***See id.*** at 26-29. ***See also id.*** at 38 (Mother's stating, "I stopped him every time"). She further testified that Child would periodically be left home alone with Appellant on the weekends when she was working as a wedding photographer and that Child would tell her after Appellant went to sleep about "what happened." ***See id.*** at 31 (Mother's explaining what Child told her: "That he smacked her and just about smacking her in the face and that kind of stuff."). When asked whether she ever saw any physical evidence of Appellant smacking Child, Mother replied: "I took pictures of the marks that were made on her face every time I came home from like an event that I was doing." ***Id.*** at 31-32.

Additionally, the Commonwealth entered into evidence four pictures of Child's face taken by Mother. ***See id.*** at 13; Commonwealth's Exhibits 1-4. The trial court found these pictures "especially compelling" in considering the sufficiency of the evidence. TCO II at 2 (unnumbered). "The pictures evidenced injury to the victim." ***Id.*** Father acknowledged that Child was wearing four different outfits in the four pictures. N.T. Trial at 15. We agree with the Commonwealth that the jury could have reasonably concluded that each of the pictures was taken on a different day after a separate incident. ***See*** Commonwealth's Brief at 10.

The Commonwealth also entered into evidence Mother's written statement given to the police regarding Appellant's abuse of Child. *See* N.T. Trial at 39; Commonwealth's Exhibit 6. Mother's statement contained references to numerous incidents which took place on separate occasions. *See* N.T. Trial at 53-54 (Mother's reading her statement on the stand, *e.g.*, Child told Mother that Appellant smacked her "a couple times in 2020[;]" Mother saw Appellant slam Child down on the floor "about a handful of times[;]" Appellant choked Child "two times this year, one time last year[;]" "Around the end of January, beginning of February this year, [Appellant] smacked [Child] with an open fist[;]" Appellant smacked Child with a belt "two times this year … [and] pulled her hair in front of me once this year"). Trooper Naschke also testified regarding her interview with Child and recalled Child describing multiple incidents of abuse. *See id.* at 63-64 (Trooper Naschke's recounting that Child indicated Appellant smacked her in the face and pulled her hair "specifically whenever her mother would leave"); *id.* at 65 (Trooper Naschke's recalling Child's claims that Appellant strangled her "approximately ten times"). Finally, Ms. Jones testified that she asked Child whether Appellant hit her on one occasion or more than one occasion and that Child replied, "[Appellant] hits her a lot." *Id.* at 81.

Based on the foregoing evidence, we would conclude that the record contains sufficient evidence to support a finding that Appellant engaged in a course of conduct that endangered the welfare of Child and, thus, we would

discern no abuse of discretion in the Appellant's third-degree felony EWOC conviction.

### III. Weight of the Evidence

In his third and final issue, Appellant challenges the weight of the evidence to support his EWOC conviction.[14] Appellant asserts that the only evidence of the alleged abuse produced by the Commonwealth was the four pictures "purport[ing] to show … [C]hild with a marked face." Appellant's Brief at 13 (citing Commonwealth's Exhibits 1-4). Referencing Count Two of the criminal information, he argues that "[t]he dramatic nature of these claims required dramatic proof." *Id.* (citing Criminal Information at 1 (alleging that Appellant "on numerous occasions, strike [*sic*] [Child], … pulled her hair, picked [her] up and slammed her to the ground, held her hands behind her back while [Appellant] struck her with a belt")). However, he notes: "There was nothing presented to verify … [C]hild being pulled by her hair, picked up, slammed and/or struck with an object. The verdict was clearly against the weight of the evidence and the shocking disparity between the accusations and the presentation justify a reversal." *Id.* at 14.

We review a weight of the evidence claim according to the following standard:

---

[14] We deem any challenge to the weight of the evidence regarding Appellant's simple assault and harassment convictions to be waived due to his failure to include such claims in his statement of questions involved. *See* Pa.R.A.P. 2116(a); *Wirth*, *supra*.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Tejada*, 107 A.3d 788, 795-96 (Pa. Super. 2015) (citation and brackets omitted).

Instantly, in response to Appellant's weight claim, the trial court stated that it found the pictures of Child "especially compelling" and that, "[c]ontrary to [Appellant's] argument, [it did] not find that the examples of physical violence were minimal." TCO I at 4. The court concluded that "the verdict in this matter was not against the weight of the evidence." *Id.* Additionally, the Commonwealth presented testimony from multiple witnesses detailing numerous accounts of Appellant's physical abuse of Child. As the Commonwealth so aptly states, "the pictures … gave the jury a visual depiction of the consequences of the abuse but were by no means an exhaustive account of …. Appellant's abuse of [Child]." Commonwealth's Brief at 13. The jury was free to believe all, part, or none of the evidence and to determine the credibility of each witness. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) ("At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses.").

Assessing all of the evidence according to the governing principles cited above, we simply cannot conclude that the trial court abused its discretion when it found that the jury's verdict did not shock its sense of justice. Consequently, Appellant's weight challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/07/2023